# 29783

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION


**JOHN H. MCCULLEY**
**LINDA K. MCCULLEY**

      Plaintiff,

vs.

**BANK OF AMERICA N.A.**
**Morris K. Sirote, corporate and individual capacity,**
**James L. Permutt, corporate and individual capacity,**
**Andy Saag**
**The Law Firm of Sirote & Permutt, P.C.**

      Defendants.

Case No. 13- 620 - CG - N

FILED DEC 17 '13 PM 3:07 USDCALS

---

## COMPLAINT FOR DAMAGES
## INJUNCTIVE RELIEF AND JURY DEMAND

---

**COMES NOW**, John H. McCulley and Linda K. McCulley (Plaintiffs), proceeding *pro se*, file their Complaint for Damages, Injunctive Relief and Jury Demand.  In support thereof, Plaintiffs allege as follows:

### INTRODUCTION

      Plaintiffs bring this action against Bank of America, Morris K. Sirote in his corporate and individual capacity, James L. Permutt in his corporate and individual capacity, Andy Sagg and

The law firm of Sirote & Permutt, P.C. (hereinafter collectively referred to as "Defendants") for money damages, actual damages, punitive damages, statutory damages, compensatory damages including any related costs and fees necessary to bring and prosecute this suit.

This action arises out of the conduct by Defendants in violation of the express provisions under the Fair Debt Collection Practices Act; 15 U.S.C. §1692 *et. seq.* and the and the consumer protection laws of the state of Alabama. This action further arises out of the Defendants' acts against Plaintiffs under 42 U.S.C. §1985(2) which states in relevant part: if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, **in any manner**, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws...; 42 U.S.C.§1986 which provides for damages from those defendants who had knowledge of the violations perpetrated against the Plaintiff as they relate to his civil rights, who had the **duty** and the ability to prevent or aid in the prevention of such violations, and who failed to perform that duty; negligent infliction of emotional distress and intentional infliction of emotional distress.

Finally, Plaintiffs seek Declaratory Relief pursuant to 28 U.S.C. §2201- §2202 regarding any related void instruments, judgments entered or otherwise filed against Plaintiffs and Plaintiffs' property and that the conduct of the Defendants, their agents and legal representatives was wanton and willful and committed with extreme malice in bringing actions against Plaintiffs and Plaintiffs' property absent any legal basis or legal authority. Plaintiff seeks a mandatory injunction prohibiting the commencement or continuation of any actions against the Plaintiffs or Plaintiffs' property and particularly, any action to dispossess Plaintiffs from the subject property as this court has supplemental jurisdiction over any related state-based and common law claims.

## PARTIES

Plaintiffs **John H. and Linda K. McCulley** are, and were at all times relevant to this action, natural persons and a consumers as that term is defined under 15 U.S.C. §1692 *et seq*. The Plaintiffs are record owners of the home at 12153 County Rd 1, Fairhope, Alabama  36532, the  property subject to this suit.

**Bank of America, NA (BANA)1,** upon information and belief, is a national banking association headquartered in Charlotte, North Carolina, with its agent for service located at CT Corporation System,  2 North Jackson Street, Suite 605, Montgomery, Alabama  36109.  BANA is a debt collector as defined under Fair Debt Collection Practices Act (FDCPA) 15 U.S.C.§1692 *et. seq*. as well as the Alabama Fair Debt Collection Practices Act (AFDCPA) §40-12-80.

Upon information and belief, **Morris K. Sirote** is a resident of Alabama and a senior partner with the law firm of Sirote & Permutt, P.C. located at 2311 Highland Avenue South, Birmingham, Alabama  35205.  Morris K. Sirote is also a debt collector as that term is defined under Fair Debt Collection Practices Act (FDCPA) as well as the Alabama Fair Debt Collection Practices Act (AFDCPA).

Upon information and belief, **James L. Permutt** is a resident of Alabama and a senior partner with the law firm of Sirote & Permutt, P.C. located at 2311 Highland Avenue South, Birmingham, Alabama  35205.  James L. Permutt is also a debt collector as that term is defined under Fair Debt Collection Practices Act (FDCPA) as well as the Alabama Fair Debt Collection Practices Act (AFDCPA).

---

[1]Bank of America NA is a named defendant  and subject to the Consent Judgment 12-361-RMC in the United States District Court for the District of Columbia.

Upon information and belief, **Andy Saag** is a resident of Alabama and a lawyer at the law firm of Sirote & Permutt, P.C. located at 2311 Highland Avenue South, Birmingham, Alabama 35205. Andy Saag is also a debt collector as that term is defined under Fair Debt Collection Practices Act (FDCPA) as well as the Alabama Fair Debt Collection Practices Act (AFDCPA).

**Sirote & Permutt, P.C.** is located at 2311 Highland Avenue South, Birmingham, Alabama 35205. Sirote & Permutt, P.C. is also a debt collector as that term is defined under Fair Debt Collection Practices Act (FDCPA) as well as the Alabama Fair Debt Collection Practices Act (AFDCPA). See *Heintz v. Jenkins*, 514 U.S. 291 (1995)

## JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter and the parties pursuant to 15 U.S.C. §1692(k)(d), 28 U.S.C. §1331(Federal Question), 28 U.S.C. §1343, 42 U.S.C. §1985 and §1986, 28 U.S.C. §2201 and 2202 (Declaratory Relief) and finally, this court has **supplemental jurisdiction** over any related state-based and common-law claims pursuant to 28 U.S.C § 1367.

Venue is proper in this District as the acts, practices and transactions pleaded herein occurred within this District, and Defendants are citizens of, residents of, are found within, have agents within, are doing business within and/or transact their affairs in this District. Plaintiff's property is located here, all related loan agreements[2] were executed in this district and finally, collection actions and communications from Defendants to Plaintiffs were transmitted and received, via mail, telephone, telefax and the Internet by the parties, respectively, in this District.

---

[2]    The promissory note and *recorded* mortgage, the loan agreement upon which the Defendants base their collection action designates Countrywide Home Loans, Inc. dba America's Wholesale Lender, as the lender and party legally entitled to invoke the provisions therein and not Bank of America, National Association.

## BACKGROUND AND FACTUAL ALLEGATIONS

1.  On or about **June 27, 2007**, Plaintiffs entered into a loan agreement encumbering Plaintiff's home, whereby they executed a note and mortgage (security instrument) in the original principal amount was $347,150. The mortgage instrument was recorded in the public records of Baldwin County, Alabama on July 24, 2007 under recording No. 1063998.

2.  Paragraph (D) under definitions of the recorded mortgage clearly designates Countrywide Home Loans, Inc. dba America's Wholesale Lender with its address of 4500 Park Grenada MSN# SVB-314, Calabasa, CA 91302-1613 as the lender.   As such, all covenants, provisos, remedies and otherwise of the lender therein, *legally speaking*, give rise to the rights of Countrywide Home Loans, Inc. dba America's Wholesale Lender.

3.  Paragraph No. 16 of the same document under "**Governing Law**", explicitly sets forth that the security instrument is to be governed by "federal law and the law of the jurisdiction in which the Property is located".   The security instrument goes on to state that "All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law".

4.  In November of 2013, due to the default status of Plaintiffs' loan, BANA, speaking through counsel Morris K. Sirote, James L. Permutt, Andy Saag, and the law firm of Sirote & Permutt, PC, initiated a foreclosure action against Plaintiffs' home.

5.  On November 18, 2013, BANA, speaking through counsel Morris K. Sirote, James L. Permutt, Andy Saag and the law firm of Sirote & Permutt, PC sent a letter to Plaintiffs. The letter states, counter to fact, that Bank of America, NA is the "servicer" of the subject loan.

6.  The letter goes on to state, counter to fact, that BANA has a "security interest in the property" and then states that such loan had been referred to Morris K. Sirote, James L. Permutt, Andy Saag and the law firm of Sirote & Permutt, PC "for foreclosure".

7.  The letter closes with the statement:  "This communication is from a debt collector."

8.  Also contained in the communication of November 18, 2013 was a document entitled "Mortgage Foreclosure Sale".  This document states that the subject mortgage was assigned to Bank of America N.A. "by instrument recorded in the Instrument Number 1301457, in the aforesaid Probate Office;..."  The instrument, a forged document *purporting* to assign Plaintiffs' mortgage, is attached hereto as Plaintiffs' **Exhibit A.**

9.  The November 18, 2013 document goes on to explicitly state that Bank of America, N.A. "will sell at public outcry to the highest bidder for cash.....on January 10, 2014....all of its rights, title, and interest...." in and to Plaintiffs' property, a property BANA has no legal right, title or interest in....of any kind.

10. Finally, the document entitled "Mortgage Foreclosure Sale" states that "the sale is made for the purpose of paying the indebtedness secured by said mortgage", a mortgage BANA has no legal ownership or interest in.

11. Neither the promissory note nor the mortgage makes reference of any kind to BANA., nor has either instrument been legally endorsed or transferred, to BANA.  As such, there is no legal basis upon which BANA, Morris K. Sirote, James L. Permutt, Andy Saag and the law firm of Sirote & Permutt, PC can commence and/or continue an action in foreclosure against Plaintiffs and Plaintiffs' home.

**FIRST CAUSE OF ACTION**
Violation of Fair Debt Collection Practices Act; 15 U.S.C.§1692 *et. Seq* as to BANA, Morris K. Sirote, James L. Permutt, Andy Saag and t Sirote & Permutt, PC

12. Plaintiff incorporates all preceding paragraphs of this complaint as though fully contained herein.

13. When , BANA, Morris K. Sirote, James L. Permutt, Andy Saag and the law firm of Sirote & Permutt, PC commenced the foreclosure action against Plaintiffs and against Plaintiffs' home, they knew that they did not own the indebtedness upon which the action was based.

14. The actions of BANA, Morris K. Sirote, James L. Permutt, Andy Saag and the law firm of Sirote & Permutt, PC in the context of its attempts to collect on this debt were in bad faith, and are a violation of the Fair Debt Collection Practices Act as well as the  Alabama Fair Debt Collection Practices Act.

15. BANA, Morris K. Sirote, James L. Permutt, Andy Saag and the law firm of Sirote & Permutt, PC and each of them, in taking the aforementioned actions set forth herein, have violated the provisions of the Fair Debt Collection Practices Act, 15 U.S.C., Chapter 41, §1692 et seq. as none of the named Defendants have a legitimate claim or interest of any kind to Plaintiffs' promissory note, mortgage or Plaintiffs' home.

16. The threatening notice sent to Plaintiffs' property and sent to them November 18, 2013 violated the provisions of 15 U.S.C. §1692e (2) (A); §1692e(4); §1692e (5); §1692e (10); §1692f(1) and 15 U.S.C. §1692g(b) of the Fair Debt Collections Practices Act.

17. The threatening notice represents a material misrepresentation, on its face, as the amounts and the legal basis to collect from or enforce against the Plaintiffs cannot be substantiated by BANA, Morris K. Sirote, James L. Permutt, Andy Saag and the law firm of Sirote & Permutt, PC with any accounting or *valid* evidence of ownership, recorded or otherwise, of the Plaintiffs' promissory note and mortgage nor any agreement between Plaintiffs and Defendants as it relates to such mortgage loan. 15 U.S.C. §1692e (2) (A) prohibits the false representation of the character, amount, or legal status of any debt. There is no debt owed by Plaintiffs' to Defendants.

18. 15 U.S.C. §1692e(4) prohibits the representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or **the seizure, garnishment, attachment, or sale of any property** or wages of any person **unless such action is lawful** and the debt collector or creditor intends to take such action. There is no debt owed by Plaintiffs' to Defendants.

19. 15 U.S.C. §1692e(5) expressly **prohibits the threat to take any action that cannot legally be taken** or that is not intended to be taken.

20. 15 U.S.C. §1692e(10) prohibits the use of any **false representation or deceptive means to collect or attempt to collect any debt** or to obtain information concerning a consumer.

21. 15 U.S.C. §1692f(1) prohibits the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) **unless such amount is expressly authorized by the agreement creating the debt or permitted by law**.  There is no debt owed by Plaintiffs' to Defendants.

22. The actions of BANA, Morris K. Sirote, James L. Permutt, Andy Saag and the law firm of Sirote & Permutt, PC, to take and sell Plaintiff's home for their failure to pay moneys to them that they were not legally owed, were deliberate and committed, in violation of 15 U.S.C.§1692 *et. seq*, for the express purpose of rendering Plaintiffs homeless, extorting money from Plaintiffs and obtaining complete interest in Plaintiffs' property, an interest to which Defendants had absolutely no legal right.

23. The acts and conduct, of all Defendants, were outrageous, wanton, willful and malicious and  Defendants knew that such conduct would cause, and did cause, substantial harm to Plaintiffs.  As a direct result of Defendants' conduct here, Plaintiffs suffered financially, suffered extreme emotional trauma, humiliation, heightened mental anguish and physical distress and other exacerbated health problems, all of which BANA, Morris K. Sirote, James L. Permutt, Andy Saag and the law firm of Sirote & Permutt, PC are strictly liable, collectively and individually.  **WHEREFORE**, Plaintiffs pray following their final cause of action.

### SECOND CAUSE OF ACTION
42 U.S.C. §1985 as to
BANA, Morris K. Sirote, James L. Permutt, Andy Saag and Sirote & Permutt, PC

24. Plaintiff incorporates all preceding paragraphs of this complaint as though fully contained herein.

25. §1985(2) in relevant part states: "if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, **in any manner**, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws…"

26. Morris K. Sirote, James L. Permutt, Andy Saag and the law firm of Sirote & Permutt, PC were at all times relevant, agents of BANA.

27. Bank of America, NA was a named defendant in Case No. 12-CV-00361-RMC in the United States District Court for the District of Columbia from which the Court issued a Consent Judgment of April 4, 2012. The consent judgment is attached hereto as Plaintiffs' **Exhibit B.**

28. Contained in the consent judgment designated as Plaintiffs' exhibit B is an "Exhibit A" delineating the settlement terms of the U.S. District Court's order.

29. Exhibit A, ¶1 of the Consent order in 12-CV-00361-RMC sets forth that "Servicer shall ensure that factual assertions made in pleadings (complaint, counterclaim, cross-claim, answer or similar pleadings), bankruptcy proofs of claim (including any facts provided by Servicer or based on information provided by the Servicer that are included in any attachment and submitted to establish the truth of such facts) ("POC"), Declarations, affidavits, and sworn statements filed by or on behalf of Servicer in judicial foreclosures or bankruptcy proceedings and notices of default, notices of sale and similar notices submitted by or on behalf of Servicer in non-judicial foreclosures **are accurate and complete and are supported by competent and reliable evidence.**"

30. Exhibit A, ¶3 states "Affiants shall confirm that they have reviewed competent and reliable evidence to substantiate the borrower's default **and the right to foreclose**, including the borrower's loan status and **required loan ownership information**."

31. Finally, Exhibit A, ¶8 states "Affidavits, sworn statements and Declarations **shall not contain information that is false or unsubstantiated.**"

32. Defendants, all of them, knew the information contained in the correspondence of November 18, 2013, regarding the sale of Plaintiffs' property at auction, the ownership and servicing of the subject loan sent to Plaintiffs, was all counter to fact and violated the Consent order of 12-CV-00361-RMC.

33. Defendants, all of them, knew or should have known the consequent result of their combined conduct would permanently deprive Plaintiffs' of their home.

34. Defendants' conduct violated United States District Corut order in Case No. 12-CV-00361-RMC mandating that BANA, Morris K. Sirote, James L. Permutt, Andy Saag and the law firm of Sirote & Permutt, PC be truthful, forthcoming submitting evidence that is "competent and reliable" regarding Plaintiff's loan ownership; such evidence **"shall not contain information that is false or unsubstantiated."**

35. Defendants knew BANA did not own Plaintiff's loan.  The actions of BANA, Morris K. Sirote, James L. Permutt, Andy Saag and the law firm of Sirote & Permutt, PC were deliberate and committed for the express purpose of rendering Plaintiffs homeless, obtaining money from Plaintiffs and obtaining complete interest in Plaintiff's property, an interest to which Defendants had absolutely no legal right.

36. The Defendants reached an agreement and/or understanding to deprive the Plaintiffs of their home and were willing participants in such joint activity. All Defendants understood the general objectives of the scheme; they accepted them and agreed either explicitly or implicitly, to do their respective parts to further such objectives. As such, Defendants BANA, Morris K. Sirote, James L. Permutt, Andy Saag and the law firm of Sirote & Permutt, PC are strictly liable for their actions collectively and individually.

37. Defendants' acts and conduct were outrageous, wanton, willful and malicious as Defendants knew the consequent result of such actions would cause, and did cause, substantial harm to Plaintiffs. As a direct result of Defendants' conduct here, Plaintiffs have suffered financially, suffered extreme emotional trauma, humiliation, heightened mental anguish and physical distress, all of which Defendants BANA, Morris K. Sirote, James L. Permutt, Andy Saag and the law firm of Sirote & Permutt, PC are liable, collectively and individually. **WHEREFORE**, Plaintiff prays following their final cause of action.

### THIRD CAUSE OF ACTION
42 U.S.C. §1986 as to
BANA, Morris K. Sirote, James L. Permutt, Andy Saag and Sirote & Permutt, PC

38. §1986 provides for damages from those defendants who had knowledge of the violations perpetrated against the Plaintiff as they relate to their civil rights, who had the **duty** and the ability to prevent or aid in the prevention of such violations, and who failed to perform that duty.

39. Each one of the Defendants failed in their respective duties to prevent or aid in the prevention of the violations against the Plaintiffs but instead acted to further the scheme and objectives of the civil conspiracy.

40. As a proximate result of the defendants' failure to act pursuant to §1986, Plaintiffs have suffered, and still do suffer, in addition to the deprivations, great mental anguish and severe emotional distress including but not limited to the anxiety and fear for their well being and financial security given the extreme indifference exemplified towards the Plaintiffs by the Defendants.  By virtue of the civil conspiracy, aiding and abetting, and concert of action and the failure to act to prevent the furtherance of such actions against the Plaintiffs, all Defendants are jointly and severally liable to the Plaintiff. **WHEREFORE**, Plaintiff prays following their final cause of action.

## DECLARATORY RELIEF

41. Plaintiff incorporates all preceding paragraphs of this complaint as though fully contained herein.

42. 28 U.S.C. §2201 states in relevant part: *"....any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."*

43. 28 U.S.C. §2202 states in relevant part: "*Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.*"

44. Pursuant to §2201, Plaintiffs ask that this Honorable Court issue declaratory judgment declaring the foreclosure action illegal and that BANA has no valid ownership interest in Plaintiffs' promissory note or mortgage.

**WHEREFORE**, Plaintiffs pray for the following relief as to the causes of action herein:

a. Statutory damages from BANA**,** Morris K. Sirote, James L. Permutt, Andy Saag and Sirote & Permutt, PC, and each of them, for the **FIRST** cause of action in an amount of not less than $1,000.00 for each and every violation, for the costs of bringing this action and attorneys fees if any;

b. Damages from BANA**,** Morris K. Sirote, James L. Permutt, Andy Saag and Sirote & Permutt, PC, and each of them, for the **SECOND** cause of action, including but not limited to economic damages, general damages, punitive damages and for the costs of bringing this action and attorneys fees if any for an amount of not less than $5,000,000.00;

c. Declaratory judgment as specified in ¶45 above and that all documents and instruments filed and/or recorded against Plaintiffs' home by any of the named Defendants be declared void and ordered removed from any public record.

## JURY DAMAND

# EXHIBIT A

BALDWIN COUNTY, ALABAMA
TIM RUSSELL PROBATE JUDGE
Filed/cert. 8/31/2011 4:34 PM
TOTAL     $    9.00
  1 Pages

1301457

MIN #:  1000157-0008234018-9

STATE OF ALABAMA                          )

COUNTY OF BALDWIN                     )

### ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the undersigned MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (the "Assignor"), does hereby transfer, assign, set over and convey unto BANK OF AMERICA, N.A. (the "Assignee"), its successors, transferees, and assigns forever, all right, title and interest of said Assignor in and to that certain Mortgage executed by HENRY MCCULLEY, to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. SOLELY AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC. DBA AMERICA'S WHOLESALE LENDER dated June 27, 2007, and filed for record in Instrument Number 1063998, in the Probate Office of Baldwin County, Alabama.

It is expressly understood and agreed that the within transfer and assignment of the said Mortgage is without warranty, representation or recourse of any kind whatsoever.

IN WITNESS WHEREOF, said Assignor has hereunto set its signature this _18_ day of _August_, 2011.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _Debbie Nieblas_

Its: **Debbie Nieblas Assistant Secretary**

State of California
County of _Ventura_

On _August 18, 2011_ before me, _Wendy L. Lau , notary public_
(insert name and title of the officer)

personally appeared _Debbie Nieblas_
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal,

Signature _Wendy L. Lau_                          (Seal)

WENDY L. LAU
COMM. # 1794900
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires May 2, 2012

This instrument prepared by:
Andy Saag
Sirote & Permutt, P.C.
P. O. Box 55727
Birmingham, AL. 35255
Sirote #: 228121

**228121*  *RecAssign*  *Y*

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

APR – 4 2012

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**12 0361**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, | ) )  )  )  ) |
| Plaintiffs, | ) )  ) |
| v. | ) )  ) |
| BANK OF AMERICA CORP. *et al.*, | )  )  ) |
| Defendants. | ) )  )  )  )  )  )  )  )  ) |

Civil Action No. _____

## CONSENT JUDGMENT

WHEREAS, Plaintiffs, the United States of America and the States of Alabama, Alaska,
Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii,
Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Michigan, Minnesota,
Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico,
New York, North Carolina, North Dakota, Ohio, Oregon, Rhode Island, South Carolina, South
Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia, Wisconsin, Wyoming,
the Commonwealths of Kentucky, Massachusetts, Pennsylvania and Virginia, and the District of
Columbia filed their complaint on March 12, 2012, alleging that Bank of America Corporation,
Bank of America, N.A., BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans
Servicing, LP, Countrywide Home Loans, Inc., Countrywide Financial Corporation,
Countrywide Mortgage Ventures, LLC, and Countrywide Bank, FSB (collectively, for the sake

of convenience only, "Defendant") violated, among other laws, the Unfair and Deceptive Acts and Practices laws of the Plaintiff States, the False Claims Act, the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, the Servicemembers Civil Relief Act, and the Bankruptcy Code and Federal Rules of Bankruptcy Procedure;

WHEREAS, the parties have agreed to resolve their claims without the need for litigation;

WHEREAS, Defendant has consented to entry of this Consent Judgment without trial or adjudication of any issue of fact or law and to waive any appeal if the Consent Judgment is entered as submitted by the parties;

WHEREAS, Defendant, by entering into this Consent Judgment, does not admit the allegations of the Complaint other than those facts deemed necessary to the jurisdiction of this Court;

WHEREAS, the intention of the United States and the States in effecting this settlement is to remediate harms allegedly resulting from the alleged unlawful conduct of the Defendant;

AND WHEREAS, Defendant has agreed to waive service of the complaint and summons and hereby acknowledges the same;

NOW THEREFORE, without trial or adjudication of issue of fact or law, without this Consent Judgment constituting evidence against Defendant, and upon consent of Defendant, the Court finds that there is good and sufficient cause to enter this Consent Judgment, and that it is therefore ORDERED, ADJUDGED, AND DECREED:

## I. JURISDICTION

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, 1355(a), and 1367, and under 31 U.S.C. § 3732(a) and (b), and over

2

Defendant.  The Complaint states a claim upon which relief may be granted against Defendant.

Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2) and 31 U.S.C. § 3732(a).

## II.   SERVICING STANDARDS

2.      Bank of America, N.A. shall comply with the Servicing Standards, attached

hereto as Exhibit A, in accordance with their terms and Section A of Exhibit E, attached hereto.

## III.   FINANCIAL TERMS

3.      *Payment Settlement Amounts.*  Bank of America Corporation and/or its affiliated

entities shall pay or cause to be paid into an interest bearing escrow account to be established for

this purpose the sum of $2,382,415,075, which sum shall be added to funds being paid by other

institutions resolving claims in this litigation (which sum shall be known as the "Direct Payment

Settlement Amount") and which sum shall be distributed in the manner and for the purposes

specified in Exhibit B.  Payment shall be made by electronic funds transfer no later than seven

days after the Effective Date of this Consent Judgment, pursuant to written instructions to be

provided by the United States Department of Justice.  After the required payment has been made,

Defendant shall no longer have any property right, title, interest or other legal claim in any funds

held in escrow.  The interest bearing escrow account established by this Paragraph 3 is intended

to be a Qualified Settlement Fund within the meaning of Treasury Regulation Section 1.468B-1

of the U.S. Internal Revenue Code of 1986, as amended.  The Monitoring Committee established

in Paragraph 8 shall, in its sole discretion, appoint an escrow agent ("Escrow Agent") who shall

hold and distribute funds as provided herein.  All costs and expenses of the Escrow Agent,

including taxes, if any, shall be paid from the funds under its control, including any interest

earned on the funds.

3

4.   *Payments to Foreclosed Borrowers.*  In accordance with written instructions from the State members of the Monitoring Committee, for the purposes set forth in Exhibit C, the Escrow Agent shall transfer from the escrow account to the Administrator appointed under Exhibit C $1,489,813,925.00 (the "Borrower Payment Amount") to enable the Administrator to provide cash payments to borrowers whose homes were finally sold or taken in foreclosure between and including January 1, 2008 and December 31, 2011; who submit claims for harm allegedly arising from the Covered Conduct (as that term is defined in Exhibit G hereto); and who otherwise meet criteria set forth by the State members of the Monitoring Committee.  The Borrower Payment Amount and any other funds provided to the Administrator for these purposes shall be administered in accordance with the terms set forth in Exhibit C.

5.   *Consumer Relief.*  Defendant shall provide $7,626,200,000 of relief to consumers who meet the eligibility criteria in the forms and amounts described in Paragraphs 1-8 of Exhibit D, and $948,000,000 of refinancing relief to consumers who meet the eligibility criteria in the forms and amounts described in Paragraph 9 of Exhibit D, to remediate harms allegedly caused by the alleged unlawful conduct of Defendant.  Defendant shall receive credit towards such obligation as described in Exhibit D.

## IV. ENFORCEMENT

6.   The Servicing Standards and Consumer Relief Requirements, attached as Exhibits A and D, are incorporated herein as the judgment of this Court and shall be enforced in accordance with the authorities provided in the Enforcement Terms, attached hereto as Exhibit E.

7.   The Parties agree that Joseph A. Smith, Jr. shall be the Monitor and shall have the authorities and perform the duties described in the Enforcement Terms, attached hereto as Exhibit E.

4

# EXHIBIT A

# Settlement Term Sheet

The provisions outlined below are intended to apply to loans secured by owner-occupied properties that serve as the primary residence of the borrower unless otherwise noted herein.

I.   **FORECLOSURE AND BANKRUPTCY INFORMATION AND DOCUMENTATION.**

Unless otherwise specified, these provisions shall apply to bankruptcy and foreclosures in all jurisdictions regardless of whether the jurisdiction has a judicial, non-judicial or quasi-judicial process for foreclosures and regardless of whether a statement is submitted during the foreclosure or bankruptcy process in the form of an affidavit, sworn statement or declarations under penalty of perjury (to the extent stated to be based on personal knowledge) ("Declaration").

A.   Standards for Documents Used in Foreclosure and Bankruptcy Proceedings.

1.   Servicer shall ensure that factual assertions made in pleadings (complaint, counterclaim, cross-claim, answer or similar pleadings), bankruptcy proofs of claim (including any facts provided by Servicer or based on information provided by the Servicer that are included in any attachment and submitted to establish the truth of such facts) ("POC"), Declarations, affidavits, and sworn statements filed by or on behalf of Servicer in judicial foreclosures or bankruptcy proceedings and notices of default, notices of sale and similar notices submitted by or on behalf of Servicer in non-judicial foreclosures are accurate and complete and are supported by competent and reliable evidence. Before a loan is referred to non-judicial foreclosure, Servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

2.   Servicer shall ensure that affidavits, sworn statements, and Declarations are based on personal knowledge, which may be based on the affiant's review of Servicer's books and records, in accordance with the evidentiary requirements of applicable state or federal law.

3.   Servicer shall ensure that affidavits, sworn statements and Declarations executed by Servicer's affiants are based on the affiant's review and personal knowledge of the accuracy and completeness of the assertions in the affidavit, sworn statement or Declaration, set out facts that Servicer reasonably believes would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. Affiants shall confirm that they have reviewed competent and reliable evidence to substantiate the

borrower's default and the right to foreclose, including the borrower's loan status and required loan ownership information. If an affiant relies on a review of business records for the basis of its affidavit, the referenced business record shall be attached if required by applicable state or federal law or court rule. This provision does not apply to affidavits, sworn statements and Declarations signed by counsel based solely on counsel's personal knowledge (such as affidavits of counsel relating to service of process, extensions of time, or fee petitions) that are not based on a review of Servicer's books and records. Separate affidavits, sworn statements or Declarations shall be used when one affiant does not have requisite personal knowledge of all required information.

4.  Servicer shall have standards for qualifications, training and supervision of employees. Servicer shall train and supervise employees who regularly prepare or execute affidavits, sworn statements or Declarations. Each such employee shall sign a certification that he or she has received the training. Servicer shall oversee the training completion to ensure each required employee properly and timely completes such training. Servicer shall maintain written records confirming that each such employee has completed the training and the subjects covered by the training.

5.  Servicer shall review and approve standardized forms of affidavits, standardized forms of sworn statements, and standardized forms of Declarations prepared by or signed by an employee or officer of Servicer, or executed by a third party using a power of attorney on behalf of Servicer, to ensure compliance with applicable law, rules, court procedure, and the terms of this Agreement ("the Agreement").

6.  Affidavits, sworn statements and Declarations shall accurately identify the name of the affiant, the entity of which the affiant is an employee, and the affiant's title.

7.  Affidavits, sworn statements and Declarations, including their notarization, shall fully comply with all applicable state law requirements.

8.  Affidavits, sworn statements and Declarations shall not contain information that is false or unsubstantiated. This requirement shall not preclude Declarations based on information and belief where so stated.

9.  Servicer shall assess and ensure that it has an adequate number of employees and that employees have reasonable time to prepare, verify, and execute pleadings, POCs, motions for relief from stay ("MRS"), affidavits, sworn statements and Declarations.

A-2

10.    Servicer shall not pay volume-based or other incentives to employees or third-party providers or trustees that encourage undue haste or lack of due diligence over quality.

11.    Affiants shall be individuals, not entities, and affidavits, sworn statements and Declarations shall be signed by hand signature of the affiant (except for permitted electronic filings). For such documents, except for permitted electronic filings, signature stamps and any other means of electronic or mechanical signature are prohibited.

12.    At the time of execution, all information required by a form affidavit, sworn statement or Declaration shall be complete.

13.    Affiants shall date their signatures on affidavits, sworn statements or Declarations.

14.    Servicer shall maintain records that identify all notarizations of Servicer documents executed by each notary employed by Servicer.

15.    Servicer shall not file a POC in a bankruptcy proceeding which, when filed, contained materially inaccurate information. In cases in which such a POC may have been filed, Servicer shall not rely on such POC and shall (a) in active cases, at Servicer's expense, take appropriate action, consistent with state and federal law and court procedure, to substitute such POC with an amended POC as promptly as reasonably practicable (and, in any event, not more than 30 days) after acquiring actual knowledge of such material inaccuracy and provide appropriate written notice to the borrower or borrower's counsel; and (b) in other cases, at Servicer's expense, take appropriate action after acquiring actual knowledge of such material inaccuracy.

16.    Servicer shall not rely on an affidavit of indebtedness or similar affidavit, sworn statement or Declaration filed in a pending pre-judgment judicial foreclosure or bankruptcy proceeding which (a) was required to be based on the affiant's review and personal knowledge of its accuracy but was not, (b) was not, when so required, properly notarized, or (c) contained materially inaccurate information in order to obtain a judgment of foreclosure, order of sale, relief from the automatic stay or other relief in bankruptcy. In pending cases in which such affidavits, sworn statements or Declarations may have been filed, Servicer shall, at Servicer's expense, take appropriate action, consistent with state and federal law and court procedure, to substitute such affidavits with new affidavits and provide appropriate written notice to the borrower or borrower's counsel.

A-3

17.     In pending post-judgment, pre-sale cases in judicial foreclosure proceedings in which an affidavit or sworn statement was filed which was required to be based on the affiant's review and personal knowledge of its accuracy but may not have been, or that may not have, when so required, been properly notarized, and such affidavit or sworn statement has not been re-filed, Servicer, unless prohibited by state or local law or court rule, will provide written notice to borrower at borrower's address of record or borrower's counsel prior to proceeding with a foreclosure sale or eviction proceeding.

18.     In all states, Servicer shall send borrowers a statement setting forth facts supporting Servicer's or holder's right to foreclose and containing the information required in paragraphs I.B.6 (items available upon borrower request), I.B.10 (account statement), I.C.2 and I.C.3 (ownership statement), and IV.B.13 (loss mitigation statement) herein. Servicer shall send this statement to the borrower in one or more communications no later than 14 days prior to referral to foreclosure attorney or foreclosure trustee. Servicer shall provide the Monitoring Committee with copies of proposed form statements for review before implementation.

B.     Requirements for Accuracy and Verification of Borrower's Account Information.

1.     Servicer shall maintain procedures to ensure accuracy and timely updating of borrower's account information, including posting of payments and imposition of fees. Servicer shall also maintain adequate documentation of borrower account information, which may be in either electronic or paper format.

2.     For any loan on which interest is calculated based on a daily accrual or daily interest method and as to which any obligor is not a debtor in a bankruptcy proceeding without reaffirmation, Servicer shall promptly accept and apply all borrower payments, including cure payments (where authorized by law or contract), trial modification payments, as well as non-conforming payments, unless such application conflicts with contract provisions or prevailing law. Servicer shall ensure that properly identified payments shall be posted no more than two business days after receipt at the address specified by Servicer and credited as of the date received to borrower's account. Each monthly payment shall be applied in the order specified in the loan documents.

3.     For any loan on which interest is not calculated based on a daily accrual or daily interest method and as to which any obligor is not a debtor in a bankruptcy proceeding without reaffirmation, Servicer shall promptly accept and apply all borrower conforming

A-4

payments, including cure payments (where authorized by law or contract), unless such application conflicts with contract provisions or prevailing law. Servicer shall continue to accept trial modification payments consistent with existing payment application practices. Servicer shall ensure that properly identified payments shall be posted no more than two business days after receipt at the address specified by Servicer. Each monthly payment shall be applied in the order specified in the loan documents.

 a. Servicer shall accept and apply at least two non-conforming payments from the borrower, in accordance with this subparagraph, when the payment, whether on its own or when combined with a payment made by another source, comes within $50.00 of the scheduled payment, including principal and interest and, where applicable, taxes and insurance.

 b. Except for payments described in paragraph I.B.3.a, Servicer may post partial payments to a suspense or unapplied funds account, provided that Servicer (1) discloses to the borrower the existence of and any activity in the suspense or unapplied funds account; (2) credits the borrower's account with a full payment as of the date that the funds in the suspense or unapplied funds account are sufficient to cover such full payment; and (3) applies payments as required by the terms of the loan documents. Servicer shall not take funds from suspense or unapplied funds accounts to pay fees until all unpaid contractual interest, principal, and escrow amounts are paid and brought current or other final disposition of the loan.

4. Notwithstanding the provisions above, Servicer shall not be required to accept payments which are insufficient to pay the full balance due after the borrower has been provided written notice that the contract has been declared in default and the remaining payments due under the contract have been accelerated.

5. Servicer shall provide to borrowers (other than borrowers in bankruptcy or borrowers who have been referred to or are going through foreclosure) adequate information on monthly billing or other account statements to show in clear and conspicuous language:

 a. total amount due;

 b. allocation of payments, including a notation if any payment has been posted to a "suspense or unapplied funds account";

A-5

      c.        unpaid principal;

      d.        fees and charges for the relevant time period;

      e.        current escrow balance; and

      f.        reasons for any payment changes, including an interest rate or escrow account adjustment, no later than 21 days before the new amount is due (except in the case of loans as to which interest accrues daily or the rate changes more frequently than once every 30 days);

Statements as described above are not required to be delivered with respect to any fixed rate residential mortgage loan as to which the borrower is provided a coupon book.

6.      In the statements described in paragraphs I.A.18 and III.B.1.a, Servicer shall notify borrowers that they may receive, upon written request:

      a.        A copy of the borrower's payment history since the borrower was last less than 60 days past due;

      b.        A copy of the borrower's note;

      c.        If Servicer has commenced foreclosure or filed a POC, copies of any assignments of mortgage or deed of trust required to demonstrate the right to foreclose on the borrower's note under applicable state law; and

      d.        The name of the investor that holds the borrower's loan.

7.      Servicer shall adopt enhanced billing dispute procedures, including for disputes regarding fees.  These procedures will include:

      a.        Establishing readily available methods for customers to lodge complaints and pose questions, such as by providing toll-free numbers and accepting disputes by email;

      b.        Assessing and ensuring adequate and competent staff to answer and respond to consumer disputes promptly;

      c.        Establishing a process for dispute escalation;

      d.        Tracking the resolution of complaints; and

      e.        **Providing a toll-free number on monthly billing statements.**

8.      Servicer shall take appropriate action to promptly remediate any inaccuracies in borrowers' account information, including:

      a.        Correcting the account information;

      b.        Providing cash refunds or account credits; and

      c.        Correcting inaccurate reports to consumer credit reporting

45. **Plaintiffs demands that a jury be empanelled to decide all claims and issues which they have a right for a jury to render judgment.**

Respectfully submitted this 17th day of December, 2013.

John H. McCulley
jhenrymc@gmail.com

Linda K. McCulley